**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-10525

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CARLOS REYNALDO ALMONTE ALMONTE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20162-RNS-2

_____

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Carlos Reynaldo Almonte Almonte pleaded guilty to conspiring to possess with intent to distribute cocaine on a vessel subject to the jurisdiction of the United States. On appeal, he raises

constitutional challenges to his conviction. The government has moved for summary affirmance. We grant the government's motion.

## I.

In April 2022, a Dominican Republic Maritime Patrol Aircraft spotted an incapacitated boat about 170 nautical miles off the coast of the Dominican Republic. The United States Coast Guard then investigated the vessel. The Coast Guard stopped and boarded the boat. Aboard the boat, the Coast Guard found two men, Almonte Almonte and Carlos Miguel Paulino Marte. Paulino Marte reported that he was the master of the boat and claimed Colombian nationality for it. When the Colombian government was contacted, it responded that it could neither confirm nor deny the boat's nationality. Based on this response, the Coast Guard treated the boat as one without nationality and concluded that it was subject to the jurisdiction of the United States. The Coast Guard recovered 286 kilograms of cocaine from the boat.

A grand jury in the Southern District of Florida returned an indictment charging Almonte Almonte with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count One) and possession with intent to distribute five kilograms

or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count Two).[1]

Almonte Almonte moved to dismiss the indictment. He argued, among other things, that the statute under which he had been indicted—the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501–08—was unconstitutional. The district court denied the motion.

After the district court denied the motion to dismiss, Almonte Almonte pleaded guilty to Count One in exchange for the government dismissing Count Two. The district court sentenced him to 72 months' imprisonment.

This is Almonte Almonte's appeal.

## II.

Summary disposition is appropriate when "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).[2]

We review *de novo* a district court's determination on its subject-matter jurisdiction. *United States v. Canario-Vilomar*, 128 F.4th

---

[1] The indictment charged Paulino Marte with the same crimes. He pleaded guilty to the conspiracy charge and received a sentence of 72 months. Paulino Marte did not appeal his conviction or sentence.

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

1374, 1378 (11th Cir. 2025). "Likewise, we review *de novo* the constitutionality of a criminal statute." *Id.* "Although a guilty plea generally waives a defendant's right to appeal his conviction, it does not waive the right to challenge the constitutionality of the statute underlying the conviction." *Id.*

### III.

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to . . . distribute, a controlled substance" on board "a vessel subject to the jurisdiction of the United States" and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1); 70506(b). The MDLEA defines "vessel subject to the jurisdiction of the United States" to include "a vessel without nationality." *Id.* § 70502(c)(1)(A). A "vessel without nationality," in turn, is defined to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C). The MDLEA's prohibitions apply even when the criminal conduct is "committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).

On appeal, Almonte Almonte raises three constitutional challenges to his conviction. Each challenge is based, in whole or in part, on the Felonies Clause of the Constitution, which authorizes Congress to punish certain offenses committed on the high seas. *See* U.S. Const. art. I, § 8, cl. 10 (granting Congress the authority "[t]o define and punish Piracies and Felonies committed on the high Seas").

In the first challenge, Almonte Almonte argues that the Felonies Clause did not authorize his prosecution because the waters where he was arrested are part of the exclusive economic zone of the Dominican Republic.[3] Relying on customary international law, he asserts that when waters are part of another nation's exclusive economic zone, they are not part of the high seas and thus the United States lacks jurisdiction to enforce the MDLEA over a vessel located in another nation's exclusive economic zone.

Almonte Almonte's second challenge focuses on the MDLEA's definition of a "vessel without nationality," which includes a vessel for which its master made a claim of nationality but the claimed nation did not affirmatively and unequivocally assert that the vessel is of its nationality. *See* 46 U.S.C. § 70502(d)(1)(C). He argues that the power granted to Congress under the Felonies Clause is subject to the bounds of customary international law, which do not permit a nation to deem a vessel stateless (and subject to its jurisdiction) when the vessel's master makes a claim of nationality but the claimed nation neither confirms nor denies the vessel's nationality.

---

[3] A nation's exclusive economic zone sits beyond its territorial waters but within 200 nautical miles of its coastal baseline. *United States v. Alfonso*, 104 F.4th 815, 821 (11th Cir. 2024). We have described the concept of an exclusive economic zone as of "relatively modern vintage." *Canario-Vilomar*, 128 F.4th at 1382; *see also Alfonso*, 104 F.4th at 823 (explaining that at the time of the adoption of the Constitution, the concept of an exclusive economic zone "did not exist").

In the third challenge, Almonte Almonte argues that his prosecution violated due process and exceeded Congress's power under the Felonies Clause because his offense had no connection or nexus to the United States.

Each challenge is foreclosed by precedent. First, we have held that other countries' exclusive economic zones are "part of the 'high seas' for purposes of the Felonies Clause" and thus "enforcement of the MDLEA in [an exclusive economic zone] is proper." *United States v. Alfonso*, 104 F.4th 815, 823, 827 (11th Cir. 2024). In reaching this conclusion, we rejected the argument that "Congress's authority under the Felonies Clause to define and punish felonies committed on the 'high seas' is limited by customary international law." *Id.* at 825.

Second, we have held that Congress did not exceed its authority under the Felonies Clause when it defined "vessel without nationality" in the MDLEA to include vessels for which a claimed nation could neither confirm nor deny nationality. *See Canario-Vilomar*, 128 F.4th at 1381. We held that "international law cannot limit Congress's authority to define 'stateless vessel' for purposes of the MDLEA." *Id.*

Third, we have rejected challenges to the application of the MDLEA to a vessel on the high seas on the basis that the vessel lacked a sufficient nexus to the United States and thus the prosecution violated principles of due process or was not permitted under the Felonies Clause. *See United States v. Campbell*, 743 F.3d 802, 810–12 (11th Cir. 2014). "[W]e have long upheld the authority of

Congress to extend the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances." *Id.* at 810 (citation modified). We have recognized that the prosecution of a noncitizen "captured on the high seas while drug trafficking" does not offend due process because the MDLEA "provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *Id.* at 812; *see also Canario-Vilomar*, 128 F.4th at 1382–83 (holding that nexus challenge was foreclosed by precedent).

Here, the government is clearly correct, as a matter of law, that Almonte Almonte's challenges are foreclosed by precedent. Our earlier decisions bind us because they have not been overturned or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). Accordingly, we **GRANT** the government's motion for summary affirmance.

**AFFIRMED.**