**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10384
Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSE DAVID PAYBA LACAYO,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00010-KKM-JSS-1

_____

Before KIDD, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

Jose David Payba Lacayo appeals his convictions under the Maritime Drug Law Enforcement Act ("MDLEA") and sentence to 46 months' imprisonment for conspiracy to possess with intent to

distribute marijuana while on board a vessel subject to the jurisdiction of the United States and possession with intent to distribute marijuana while on board a vessel subject to the jurisdiction of the United States.  On appeal, Lacayo argues that the MDLEA is unconstitutional facially and as applied to his offense because: (1) the term "high Seas" under U.S. Const. art. I, § 8, cl. 10 must be defined consistently with international law, and, under international law, the high seas do not include the exclusive economic zones ("EEZs") of foreign nations; and (2) Congress exceeded its authority under U.S. Const. art. I, § 8, cl. 10 in defining a "vessel without nationality" to include vessels that are not stateless under international law -- namely, those where a country states that it can neither confirm nor deny the claimed nationality or registry of the vessel.  In response, the government moves for summary affirmance, arguing that Lacayo's arguments are foreclosed by our decisions in *United States v. Alfonso*, 104 F.4th 815, 818 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 2706 (2025), and *United States v. Canario-Vilomar*, 128 F.4th 1374, 1377 (11th Cir. 2025), *cert. denied*, No. 25-5506 (U.S. Oct. 6, 2025).  Lacayo concedes that these decisions foreclose his arguments.  After careful review, we grant the government's motion for summary affirmance.

Summary disposition is appropriate either where time is of the essence, such as "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the

outcome of the case, or where . . . the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).[1]

When a motion to dismiss an indictment is based on subject-matter jurisdictional grounds, we review the district court's denial of the motion *de novo*. *Alfonso*, 104 F.4th at 820. Similarly, "[w]e review *de novo* a district court's interpretation of a statute and whether a statute is constitutional." *United States v. Cabezas-Montano*, 949 F.3d 567, 586 n.10 (11th Cir. 2020). Under our prior-panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

Under Article I, Section 8, Clause 10 of the Constitution, Congress has "three distinct grants of power: (1) the power to define and punish piracies (the Piracies Clause); (2) the power to define and punish felonies committed on the high Seas (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations (the Offences Clause)." *Alfonso*, 104 F.4th at 820 (citation modified); U.S. Const. art. I, § 8, cl. 10.

The MDLEA makes it unlawful to "knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" while on board "a covered vessel," and to

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

conspire to do the same.  46 U.S.C. §§ 70503(a)(1), 70506(b).  The statute defines a "covered vessel" to include "a vessel subject to the jurisdiction of the United States."  *Id.* § 70503(e).  A "vessel subject to the jurisdiction of the United States," in turn, includes "a vessel without nationality."  *Id.* § 70502(c)(1)(A).  A "vessel without nationality" is defined to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."  *Id.* § 70502(d)(1)(C).

In *Alfonso*, the defendants were stopped by the United States Coast Guard ("USCG") in the Dominican Republic's EEZ, and one of the defendants made a claim of Colombian nationality for the vessel.  104 F.4th at 819.  After Colombia could neither confirm nor deny the registry of the vessel, the USCG treated it as stateless under the MDLEA and seized 12 bales of cocaine from it.  *Id.*  The defendants subsequently appealed their convictions under the MDLEA, arguing, in part, that the MDLEA was unconstitutional as applied to them because the definition of "high Seas" under the Felonies Clause was limited by international law, and, because the EEZ was not part of the high seas under international law, it fell outside of Congress's authority.  *Id.* at 819, 821.  We rejected this challenge, reasoning that, based on the Founding-era concept of the "high Seas," a nation's EEZ is part of the "high Seas" under the Felonies Clause, and that "the Felonies Clause is not limited by customary international law."  *Id.* at 821–26.  We concluded that the MDLEA could therefore be properly enforced in EEZs.  *Id.* at 827.

In *Canario-Vilomar*, the appellants, who were seized in vessels in EEZs of foreign nations and convicted under the MDLEA, argued that Congress exceeded its authority under the Felonies Clause by defining "a 'vessel without nationality'" in the MDLEA "to include vessels that are not stateless under international law." 128 F.4th at 1378. The appellants claimed that the Felonies Clause incorporated principles of international law and that, under international law, a stateless vessel did not include a vessel for which a nation can neither confirm nor deny a claim of national registry. *Id*. at 1378–79. We rejected this challenge, reaffirming *Alfonso*'s ruling that the Felonies Clause is not limited by customary international law and concluding that international law therefore could not limit Congress's authority to define "stateless vessel" under the MDLEA. *Id*. at 1381. We also reaffirmed *Alfonso*'s ruling that the MDLEA could properly be enforced in EEZs. *Id*. at 1381–82.

Here, the government is clearly right as a matter of law that Lacayo's challenges are foreclosed by our holdings in *Alfonso* and *Canario-Vilomar*. *See Groendyke*, 406 F.2d at 1162. As for Lacayo's argument that the MDLEA is unconstitutional because Congress lacks the authority under the Felonies Clause to criminalize conduct occurring in other countries' EEZs, we squarely rejected this argument in *Alfonso*, concluding that the MDLEA could properly be enforced in EEZs and that "the Felonies Clause is not limited by customary international law." 104 F.4th at 826–27. As for Lacayo's argument that the MDLEA is unconstitutional because Congress exceeded its authority under the Felonies Clause in defining a "vessel without nationality" to include vessels that are not stateless

under international law, we rejected this argument in *Canario-Vilomar* and reaffirmed our ruling in *Alfonso* that international law does not limit Congress's authority to define "stateless vessel" under the MDLEA.  128 F.4th at 1381.

Accordingly, because the government's position is clearly right as a matter of law, we **GRANT** the government's motion for summary affirmance.  *See Groendyke*, 406 F.2d at 1162.